IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDRE PEARSON, : | |
|     Plaintiff, : | |
| : | |
| vs. : | CIVIL ACTION 18-0379-TFM-MU |
| : | |
| OFFICER JEREMY WATSON, et. al., : | |
|     Defendants. : | |

## **REPORT AND RECOMMENDATION**

Plaintiff Andre Pearson, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that Defendants' Motion for Summary Judgment as to his Eighth Amendment claims be **GRANTED,** and Plaintiff's complaint be **DISMISSED** in its entirety.

    **I.**    **SUMMARY OF ALLEGATIONS**

Plaintiff Andre Pearson brings this action against Officers Watson, Quarles, and Madison. He alleges these officers failed to properly perform their jobs or provide security as required by the Alabama Department of Corrections and its regulations. (Doc. 1 at 17). After a thorough review of Plaintiff's complaint, the Court interprets his allegations to be an Eighth Amendment claim for deliberate indifference to his safety and excessive use of force.

From its review of the record, the Court summarizes the material factual allegations in this case in the light most favorable to Plaintiff.[1]  On June 15, 2018, while working in the segregation unit at Holman Correctional Facility ("Holman"), Officer Watson opened Inmate Blackmon's cell door to push water out of his cell.[2]  In doing so, Plaintiff claims Officer Watson left Inmate Blackmon unsupervised and did not securely lock Inmate Blackmon back in his cell.  Inmate Blackmon left his cell and attacked Plaintiff from behind with a knife.  Plaintiff claims the cubicle officer, Officer Quarles, failed to monitor the control board located in the cube to ensure that Inmate Blackmon was securely locked behind his door and further failed to sound an alarm and notify officials that Inmate Blackmon had exited his cell.

Plaintiff further alleges that excessive force was applied against him by Officer Madison.  According to Plaintiff, after Blackmon stabbed him multiple times, Plaintiff took Blackmon's knife, and Blackmon ran.  Plaintiff alleges,

> [I] took off after Blackmon and jumped on his back and tried to stab him. But as I tried, I was sprayed by COI Madison with the pepper spray and hit on my back with a baton wielded by Lt. Banks.  I was then handcuffed and took to the infirmary for medical attention.

(Doc. 1 at 17).

---

[1]  For summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to Plaintiff, who is the non-moving party. *See Skritch v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002). "[T]he 'facts' as accepted at the summary judgment stage of he proceedings, may not be the 'actual' facts of the case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[2]  Plaintiff claims that prior to Officer Watson opening Inmate Blackmon's cell door, Officer Watson passed a squeegee to Inmate Blackmon while he was secured in his locked cell. (Doc. 1 at 13).  According to Plaintiff, this is the typical procedure and cell doors do not need to be opened and ordinarily are not, as opening cell doors while hall-workers are on the floor "creates an unnecessary danger to the inmate hall-workers." (*Id*. at 13-14).

According to Plaintiff, "[t]his was a complete surprise attack. It never occurred to me while I was cleaning L-and k-Tier that inmate Blackmon's cell door was still opened and that Officer Warson had completely abandoned supervising him. It also never occurred to me that the officer in the cube or Watson did not make sure that inmate Blackmon's cell was secured." (Doc. 1 at 17). Plaintiff claims he suffered stab wounds requiring sutures from the attack and has suffered from headaches, dizziness, and falls since the attack. Plaintiff seeks an award of monetary damages.

Defendants have Answered the suit and filed a Special Report arguing that Plaintiff has failed to establish that Defendants had sufficient knowledge of and appreciated the risk of harm, that Defendants acted unreasonably or that their actions or inactions actually caused harm. Thus, Plaintiff cannot establish deliberate indifference. (Docs. 12, 13). Defendants also argue that they are immune from suit in their official capacities, and they assert the defense of qualified immunity to suit in their individual capacities. (Doc. 12 at 1). After providing notice to the parties, the Court converted Defendants' Answer and Special Report into a Motion for Summary Judgment (Doc. 15) and provided the parties with an opportunity to submit briefs and materials in support or opposition to the motion. Plaintiff filed a response in opposition to the motion.[3] (Doc. 21).

The Court has thoroughly reviewed the parties' pleadings and other submissions. The Motion for Summary Judgment is ripe for consideration.

---

[3]  In a single paragraph opposing summary judgment, Plaintiff contends Defendants violated his Eighth Amendment right "to serve and protect me, Officer Jeremy Watson did not lock and secure inmate Blackmon behind his cell door, resulting in inmate Blackmon coming out his cell to attack me 'Andre Pearson' with a knife, Officer D. Quarles failed to check the cube control panel to make sure inmate Blackmon was secured his cell door, in which put my life in immediate danger causing me bodily harm." (Doc. 21 at 1-2).

## II.     LEGAL STANDARD

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Allen v. Board of Public Educ. for Bibb Cnty*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay,*

*Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the Plaintiff. *Comer,*

*supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp., supra*, 43 F.3d at 599.

## III.   DISCUSSION

As noted above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for Eighth Amendment violations based on an attack by a fellow inmate and the use of force against him subsequent to the attack. (*See* Doc. 1). The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment governs the use of force by prison officials against convicted inmates, *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999), and "'imposes a duty on prison officials' to 'take reasonable measures to guarantee the safety of the inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations and quotations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison

6

officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Purcell v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (quotation omitted).

### 1. Official Capacity Claims.

To the extent Plaintiff has sued Defendants in their official capacities, they are entitled to immunity pursuant to the Eleventh Amendment. The named defendants in this action are correctional officers employed by the Alabama Department of Corrections. "A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009). As a practical matter, then, Plaintiff's § 1983 claims against Defendants in their official capacities functionally reduce to § 1983 claims against the State of Alabama itself. Thus, Plaintiff may not sue Defendants in their official capacities. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (stating that with some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought.") (citations omitted).

### 2. Individual Capacity Claims.

To the extent Plaintiff has brought this suit against Defendants in their individual capacities, the Defendants have plead the defense of qualified immunity against the allegations asserted against them. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). However, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). Given that the record evidence supports the determination that the Defendants were acting within the scope of their discretionary authority at all times when the acts in question occurred, the burden now shifts to Plaintiff to show why the Defendants are not entitled to qualified immunity. *See Hartley v. Parnell*, 193 F.3d 1263, 1270-72 (11th Cir. 1999) (explaining entitlement to qualified immunity where the plaintiff fails to demonstrate a constitutional violation).

### a. Eighth Amendment Failure to Protect

"A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk.'" *Caldwell*, 748 F.3d at 1099 (emphasis in original) (citation omitted). To survive summary judgment on a failure to protect claim, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotation omitted).

The first element — a substantial risk of serious harm — is measured against an objective standard. *Caldwell*, 748 F.3d at 1099. Under this standard, the alleged

condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). Thus, there must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quotation omitted). "Moreover, the risk must be actual, rather than potential or speculative." *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 767 (11th Cir. 2016) (per curiam) ("So, for example, a prisoner's exposure to the potential for a fight does not, in and of itself, constitute substantial risk of harm.").

The second element — the prison official's deliberate indifference to the risk — has both a subjective and an objective component. "To satisfy the subjective component, a plaintiff must produce evidence that the defendant 'actually (subjectively) knew that an inmate faced a substantial risk of serious harm.'" *Caldwell*, 748 F.3d at 1099 (citation and alterations omitted). "[A] prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. *Estate of Owens*, 660 F. App'x at 767 (internal citations omitted). To meet the objective component, a plaintiff must produce evidence that the defendant disregarded the known substantial risk by failing to respond to it in an objectively reasonable manner. *Caldwell*, 748 F.3d at 1099. Thus, "[i]n this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence." *Estate of Owens*, 660 F. App'x at 767. Where more than one defendant is alleged to have been deliberately indifferent, "[e]ach individual [d]efendant must be judged separately and

9

on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

The third element — causation — requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993).

Here, Defendants completely deny the allegations asserted against them. (*See* Docs. 13-1, 13-2). Officer Watson affirms that he never opened Inmate Blackmon's cell door as alleged by Plaintiff. Instead, Officer Watson testifies that he opened Inmate Blackmon's tray door so that Inmate Blackmon could push some water out of his cell with a squeegee, and Inmate Blackmon passed the squeegee back through the tray door when he finished. Officer Watson affirms that he then secured the tray door and returned the squeegee to Death Row, while another officer remained present in the segregation unit. (Doc. 13-1). Officer Quarles testifies that, although he was assigned to Cubicle #5, he has no knowledge of the alleged incident because he had been relieved from his post to take a break. (Doc. 13-2).

In support of their denial, Defendants have submitted the Incident Report regarding the inmate attack. Investigation into the incident revealed Plaintiff Pearson placed a stick in the open port hole of Inmate Blackmon's cell, opened the cell door, entered the cell with a handmade knife, and the two inmates began to fight. Inmate Blackmon knocked the knife from Plaintiff and began to stab Plaintiff. (Doc. 13-4). The body charts reflect five puncture wounds to Plaintiff's back and lacerations to his neck, check and elbow and

10

numerous scratches to Inmate Blackmon's facial area, back, and hands.  (Doc. 13-4 at 3, 4, respectively).

Taking Plaintiff's allegations as true, for purposes of this motion, there is simply no probative evidence sufficient to show deliberate indifference to an objectively "substantial serious risk of harm" posed by inmate Blackmon (or any inmate) to Plaintiff prior to the stabbing on June 15, 2018.  *Cf. McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991) ("A prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety."), *overruled in part on other grounds by Farmer*, 511 U.S. at 828.  Specifically, Plaintiff presents no evidence that even he was aware or fearful of a possible attack at the time it occurred.

Plaintiff does not state that he had been involved in previous altercations (or even interactions) with inmate Blackmon or that he ever notified prison officials that he feared an attack by Blackmon or any other inmate.  In short, Plaintiff fails to provide probative evidence of an objectively substantial serious risk of harm posed by inmate Blackmon to Plaintiff prior to the attack, as is necessary to establish deliberate indifference.  *See Nelson v. Lett*, 2018 U.S. Dist. LEXIS 216234, at *18, 2018 WL 7140235, at *7 (S.D. Ala. Dec. 21, 2018) ("Nelson's mere allegation that that Bedgood was a close custody inmate because of prior assaultive/violent behavior . . . fails to establish either of the requisite elements necessary to proceed on a claim of deliberate indifference to his safety. Specifically, there is no probative evidence before the Court of 'an objectively substantial serious risk of harm' posed by Bedgood to Nelson prior to the attack as is necessary to establish deliberate indifference."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 13911, 2019 WL 362271 (S.D. Ala. Jan. 29, 2019); *Johnson v. Boyd*, 568 F. App'x

719, 722 (11th Cir. 2014) (finding that complaint's allegation of inmate assailant's destructive behavior in cell prior to attack did "not sufficiently allege that [the assailant's] behavior created a 'strong likelihood' of injury to [the inmate plaintiff]").

Moreover, even if Plaintiff had satisfied the first objective element, his claim based on Defendants' failure to protect him prior to the attack nonetheless fails because the record is utterly devoid of evidence that either Defendant Watson or Quarles possessed subjective knowledge that Blackmon (or any inmate) posed a substantial risk of serious harm to Plaintiff.  Plaintiff alleges no prior threats, fights, arguments, or other difficulties between himself and inmate Blackmon (or between Blackmon and any inmate), and certainly none that either Defendant was aware of.  *See Averhart v. Kendrick*, 2014 U.S. Dist. LEXIS 24448, 2014 WL 771126, at *3 (N.D. Ala. Feb. 25, 2014), *aff'd sub nom*. *Averhart v. Warden*, 590 F. App'x 873 (11th Cir. 2014); *Nelson*, 2018 U.S. Dist. LEXIS 216234, at *19, 2018 WL 7140235, at *7 ("The mere fact that Bedgood was in close custody because of assaultive/violent behavior fails to establish that [defendants] possessed subjective knowledge that Bedgood posed a substantial risk of harm to Nelson. . . . ").

Moreover, Plaintiff's insinuation that Defendants permitted his assailant to leave his cell with the knowledge that Blackmon had a knife and intentions to attack Plaintiff is purely conclusory and thus without probative value.  Plaintiff presents no specific facts that would support this apparent contention.  Aside from his conclusory assertions, Plaintiff offers no facts that remotely suggest that these Defendants knew or had any reason to know that Blackmon had a knife or intended to exit his cell and attack Plaintiff.

Accordingly, Plaintiff's allegations against Defendants Watson and Quarles for failure to protect him prior to the inmate attack amount to negligence at best, which is not actionable under § 1983. *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Hughes*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983 . . . ."). Because Plaintiff has not met his burden to show a constitutional violation, Defendants are entitled to qualified immunity, and it is therefore recommended that summary judgment be granted in favor of Defendants Watson and Quarles on this claim.

### b. Eighth Amendment Excessive Force.

In order to establish an Eighth Amendment excessive force claim against Defendant Madison, Plaintiff must prove both an objective and subjective component, as discussed previously. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted). While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it "is not of a sort repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted).

In a prison setting, force is deemed legitimate when it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)). In determining the legitimacy of force used, courts consider: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evidenced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Skirtch v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 321). Notably, prison officials "acting to preserve discipline and security" are given "broad deference" when evaluating whether force used was excessive or not. *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir. 2016).

In response to the allegations against him, Madison affirms he was assigned as Death Row Rover at the time of the incident of this complaint. He testifies that he observed inmates Blackmon and Pearson engaged in a physical altercation in the segregation unit. He gave several direct orders for the inmates to stop fighting, but they did not comply. Officer Madison deployed a one second burst of pepper spray to the facial area of inmate Pearson and Blackmon. Both inmates complied with the order to stop fighting and no other force was used. (Doc. 13-3).

No doubt, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennet v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Specifically, force may be used against a prisoner who fails to comply with the direct orders of an officer. *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted). And, pepper spray has long been recognized by The Eleventh Circuit as "an accepted non-lethal means of controlling unruly inmates." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F,3d 701, 709 (11th Cir. 2010). Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation. *Pearson*, 665 F. App'x at 864. Accordingly, a short burst of pepper spray (around 5 seconds or less) is "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Id.*

Here, Plaintiff contends he was on inmate Blackmon's back, attempting to stab Blackmon, at the time force was used against him. Not once does Plaintiff deny, dispute, or refute (in any pleading) that Officer Madison ordered him to stop fighting. The record thus confirms that there was a legitimate need for force (based on a dangerous fight between two inmates, who refused to obey orders to stop fighting), and the force was applied "in a good faith effort to maintain or restore discipline", as all force ceased as soon as Plaintiff and inmate Blackmon were secured in handcuffs. *Whitley*, 475 U.S. at 320-21.

15

The record also evidences that the amount of force used was appropriate to the need. Defendants have submitted Plaintiff's body chart following the incident, which shows that Plaintiff had no injuries due to the force and made no complaints at that time other than "get the spray out of my eyes!" (Doc. 13-4 at 3). There are no subsequent medical records indicating lingering effects of the chemical spray. And, most importantly, Plaintiff fails to articulate any specific injury. The undersigned notes that unlawful spraying of chemical agents can surely lead to an Eighth Amendment violation and may give rise to greater than *de minimis* physical injury,[4] however, Plaintiff has failed to carry his burden of showing such here. *Cf.*, *Hudson*, 503 U.S. at 8 ("What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue."); *see also, Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002) (in an incident involving pepper spray, a case-specific inquiry should take place

---

[4]  Generally speaking, the harm suffered from pepper spray is considered *de minimis* and falls short of establishing a physical injury. *Cf., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort"). However, when additional injuries are established, courts have found the "physical injury" to be greater than de minimis. *See Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) (20-minute placement of prisoner in a small, unventilated, contaminated cell after the lawful use of pepper spray constituted excessive force); *Thompson v. Smith*, 805 F. App'x 893 (11th Cir. 2020) (greater than de minimis injury occurred when the plaintiff was left with the chemical agents on his face for approximately 20 minutes; experiencing coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to a cell that remained contaminated with pepper spray residue for a least an additional day); *Blount v. Farmer*, No. 7:14CV00418, 2015 U.S. Dist. LEXIS 93422, 2015 WL 4404810, at *3 (W.D. Va. July 17, 2015) (denying correctional officer's motion for summary judgment on objective inquiry of excessive force claim where inmate alleged pepper spray caused "coughing, sneezing, excessive mucus, and a painful burning sensation on his skin that lasted for a whole day.").

"consider[ing] the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred").

Accordingly, Plaintiff has failed to establish a constitutional violation, and summary judgment should be GRANTED in favor of Defendant Madison.

## IV.     CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be GRANTED in favor of Defendants Watson, Quarles, and Madison, and Plaintiff's claims DISMISSED in their entirety.

The instructions below contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this 20th day of October, 2020.

                                       <u>s/P. Bradley Murray</u>
                                       UNITED STATES MAGISTRATE JUDGE